

# Child Foundation

# Compliance Policy Manual

## Table of Contents

Table of Contents ................................................................................................................. 1

**1    Introduction** ............................................................................................................... **4**

   *1.1    Compliance Manual Overview* ........................................................................ *4*
      1.1.1    Purpose ................................................................................................ 4
      1.1.2    Effective Date ..................................................................................... 5
      1.1.3    Periodic Review of Compliance Procedures ................................. 5

   *1.2    List of Compliance Policies and Related Documents* .................................... *5*

   *1.3    Compliance Program Acknowledgment Requirement* .................................... *5*

   *1.4    Compliance Officer Roles and Duties* ............................................................ *6*
      1.4.1    Chief Compliance Officer ................................................................ 6
      1.4.2    Deputy Compliance Officer ............................................................ 6
      1.4.3    Special Duties of Compliance Officers .......................................... 6

   *1.5    Whistleblower Policy* ....................................................................................... *7*

   *1.6    How to Report a Compliance Violation* .......................................................... *7*

**2    Structure of the Organization and Board Governance Obligations** ................. **8**

   *2.1    Governing Documents* ..................................................................................... *8*

   *2.2    Separation of Board and Staff Functions* ....................................................... *8*

   *2.3    Board Member Functions* ............................................................................... *9*
      2.3.1    Board Composition ........................................................................... 9
      2.3.2    Board Member Orientation, Training, and Required Undertakings ......... 9

   *2.4    Length of Service & Term Limits* .................................................................. *10*

   *2.5    Board of Directors Meetings* ......................................................................... *10*

   *2.6    Board Responsibility to Monitor Mission and Strategy* ............................... *10*

   *2.7    Board Oversight of Financial Activities* ....................................................... *10*

   *2.8    Establishing the Annual Budget* ................................................................... *11*

   *2.9    Maintaining Balanced Reserves* ................................................................... *11*

   *2.10    Monitoring the President's Performance and Setting Compensation* .......... *12*

   *2.11    Commitment to Diversity and Inclusion* ...................................................... *12*

**3      Conflicts of Interest** ................................................................................................ **12**

*3.1     Policy* ........................................................................................................................... *12*

*3.2     Disclosure Form* ......................................................................................................... *13*

*3.3     Continuing Disclosure Obligation* ............................................................................. *13*

**4      Tax-exempt Status as a Public Charity** ................................................................. **13**

*4.1     No Private Benefit Rule* .............................................................................................. *13*

*4.2     Substantiation of Donations and Income* ................................................................... *14*

*4.3     Documentation of Quid Pro Quo Contributions* ........................................................ *14*

*4.4     Prohibition on Lobbying or Political Campaigning* ................................................... *15*

*4.5     Fundraising Disclosures* ............................................................................................. *15*

*4.6     Prohibition on allowing Donor Oversight of their Contributions* .............................. *15*

    4.6.1    Disclaimer to Child Sponsors ............................................................................. 16

**5      Office of Foreign Asset Control (OFAC) Compliance Procedures** ..................... **16**

*5.1     Purpose and Scope* ...................................................................................................... *16*

*5.2     What is OFAC?* ............................................................................................................ *16*

*5.3     Prohibition on Transactions with Blocked Persons* .................................................... *17*

    5.3.1    Verification Software and Database ..................................................................... 17

    5.3.2    Parties to Be Screened ......................................................................................... 17

    5.3.3    Compliance Verification Procedure ..................................................................... 18

    5.3.4    Reporting of Blocked Transactions ...................................................................... 18

    5.3.5    Quarterly Re-Screening by Deputy Compliance Officer ..................................... 18

*5.4     OFAC Compliance Policy re Iranian Child Sponsorship Program* ............................ *19*

    5.4.1    Humanitarian Donations Exception ..................................................................... 19

    5.4.2    Memorandum of Understanding with Iranian NGO, Refah Koudak ................... 19

    5.4.3    Personal Communications and Informational Materials ...................................... 20

    5.4.4    Travel-Related Transactions ................................................................................ 20

    5.4.5    Ancillary Services ................................................................................................ 20

    5.4.6    Specific Licenses ................................................................................................. 20

    5.4.7    Restrictions on Financial Transactions and Logistics ......................................... 20

**6      Financial Management and Practices** ..................................................................... **21**

*6.1     Bookkeeping Procedures* .............................................................................................. *21*

*6.2     Role of the Financial Controller* ................................................................................. *21*

*6.3     Travel and Entertainment Reimbursement Policy* ....................................................... *22*

**7      Document Retention Policy** ...................................................................................... **22**

**8      Public Information and Reporting** .......................................................................... **23**

    8.1.1    Annual Reporting ................................................................................................ 23

    8.1.2    State Registration and Reporting ......................................................................... 24

    8.1.3    Additional Public Disclosures ............................................................................. 24

*8.2     External Financial Audits* ........................................................................................... *24*

**9      APPENDIX** ...................................................................................................................**25**

*9.1    Compliance Program Acknowledgment Form* .......................................................... 25

*9.2    Articles of Incorporation* ........................................................................................ 25

*9.3    Bylaws* .................................................................................................................... 25

*9.4    Board Member Roles, Rights, and Responsibilities* ................................................ 25

*9.5    Travel and Entertainment Expense Reimbursement Policy* ..................................... 25

*9.6    Conflict of Interest Policy & Disclosure Form* ....................................................... 25

*9.7    Prohibited Transactions Screening Process & Acknowledgment Form* .................. 25

*9.8    Legal Guidelines for Iranian Child Sponsorship Program & Memorandum of Understanding with Refah Koudak* ............... 25

*9.9    Bookkeeping Guidelines* ......................................................................................... 25

*9.10      Annual Report* ..................................................................................................... 25

# 1    Introduction

Child Foundation, Inc. ("CF") is an Oregon-based not-for-profit organization that helps impoverished children who have been identified as high achievers remain in school. CF's programs provide children in need with life-saving humanitarian aid, as well as access to education and hope for a better future.

At CF, we believe that education can move a child beyond the stigma of poverty, and give that child the tools to reach his or her true and full potential. Through our work, we hope to increase the number of students graduating from high school and reduce early matrimony rates.

## 1.1    Compliance Manual Overview

### 1.1.1    Purpose

This manual is intended to provide all members of CF's staff, Board, committees, regional offices, affiliates, and anyone else involved in CF operations with clear guidance on CF policies and procedures. The policies set forth in this manual have been put in place to ensure compliance with all applicable state and federal laws. These practices have been developed by the Board of Directors in close consultation with CF's outside legal counsel, who are listed below.

Robert Calo
Erin Wilson
Lane Powell PC
601 SW Second Avenue
Suite 2100
Portland, OR 97204

Dan Fisher-Owens
Berliner, Corcoran & Rowe, LLP
Suite 100
1101 Seventeenth Street, NW
Washington, DC 20036

Tina M. Foster
Law Office of Tina Foster
214-06 36th Avenue, No. 3
New York, NY 11361

All CF staff and Board members are required to familiarize themselves with this manual, and to strictly adhere to its requirements. Failure to abide by compliance policies and procedures will result in disciplinary action, up to and including termination of employment.

**1.1.2    Effective Date**

This Compliance Policy Manual was initially approved and adopted by CF's Board of Directors on January 22, 2012, and has been continuously in effect since that time.

**1.1.3    Periodic Review of Compliance Procedures**

This Compliance Manual, and the policies incorporated by reference herein, shall be periodically reviewed by CF's Board of Directors to address any changes in program activities or legal requirements. At a minimum, CF's Board of Directors shall review the policies and procedures described in this manual with its attorneys at least once every 12 months.

The current version of this manual was last reviewed, updated, and adopted by the Board of Directors on January 22, 2012.

**1.2    List of Compliance Policies and Related Documents**

The following policies and procedures are incorporated by reference, and are included in the Appendix to this manual.

1.      Compliance Program Acknowledgment Form
2.      Articles of Incorporation
3.      Bylaws
4.      Board Member Roles, Rights, and Responsibilities
5.      Travel and Entertainment Expense Reimbursement Policy
6.      Conflict of Interest Policy & Disclosure Form
7.      Prohibited Transactions Screening Process & Acknowledgment Form
8.      Legal Guidelines for the Iranian Child Sponsorship Program & Memorandum of Understanding with Refah Koudak
9.      Bookkeeping Guidelines
10.     Annual Report

**1.3    Compliance Program Acknowledgment Requirement**

Child Foundation requires all staff and Board members to observe high standards of business and personal ethics in the conduct of their duties on behalf of the organization. Prior to commencing any activities on behalf of the organization, every member of CF's staff and Board, and any other individual carrying out activities on behalf of the organization, must agree to abide by all CF compliance policies and procedures set forth (or incorporated by reference) in this manual. All staff and Board members shall also complete and sign a copy of the Compliance Program Acknowledgment Form included in the Appendix at Tab 9.1.

As soon as practicable after any amendment or revision to this manual is enacted, the Compliance Officers shall ensure that all staff and Board are apprised of the changes. The Compliance Officers shall also ensure that up-to-date copies of all staff and Board Compliance Program Acknowledgment Forms are maintained in CF's personnel and compliance files.

1.4    Compliance Officer Roles and Duties

1.4.1    Chief Compliance Officer

The Board of Directors shall appoint one of its members (other than the President) to serve as CF's Chief Compliance Officer. The Chief Compliance Officer shall report directly to the Board. He or she is also responsible for keeping the Board and outside legal counsel apprised of any reports of suspected or actual compliance violations.

At present, the Secretary of the Board of Directors, Dr. Asad Azemi, serves as CF's Chief Compliance Officer.

1.4.2    Deputy Compliance Officer

The President shall appoint a member of CF's office staff to serve as Deputy Compliance Officer. The Deputy Compliance Officer shall be responsible for assisting the Chief Compliance Officer in ensuring CF's daily office operations are consistent with the compliance policies and procedures set forth in this manual. The Deputy Compliance Officer shall also be responsible for reviewing this Compliance Manual with new staff members, and serving as a resource for existing staff member inquiries or concerns. CF's current Deputy Compliance Officer is Vicki Rounds.

1.4.3    Special Duties of Compliance Officers

The Chief Compliance Officer is responsible for receiving reports of non-compliance, and initiating and documenting the Board of Director's responsive actions. The Chief Compliance Officer shall also provide an annual summary report at the Annual Meeting of the Board of Directors detailing reported complaints of non-compliance during the past year, if any, and their current status and/or ultimate disposition. The Board Secretary shall include a copy of the Chief Compliance Officer's annual summary report, and any Board action taken in response thereto, as part of the minutes of the Annual Meeting.

Any member of CF's staff, Board, or any other person suspecting a violation of this manual may report his/her concerns directly to the Chief Compliance Officer. However, staff members may also feel more comfortable directing inquiries or complaints to the Deputy Compliance Officer (who is a member of the office staff), and should feel free to do so.

The Deputy Compliance Officer shall immediately report any incident or complaint of a suspected or actual violation of this manual to the Chief Compliance Officer for further review and investigation. In the event that such an incident or report involves the Chief Compliance Officer,

the Deputy Compliance Officer shall refer the matter to the Chairman of the Board and CF's outside legal counsel.

The Compliance Officers shall immediately inform CF's outside legal counsel of any reported incident of a violation of this manual which involves a member of CF's Board of Directors.

As soon as practicable (and no later than 3 business days) upon receiving a complaint of a violation of CF's compliance policy, the Chief Compliance Officer shall inform CF's Board of Directors and outside legal counsel. The Board of Directors, in consultation with legal counsel, shall initiate an investigation into the merits of the complaint, and, if indicated, take appropriate responsive action. As soon as practicable (and no later than ten business days) after receiving a complaint of an actual or suspected violation of CF's compliance policy, the Chief Compliance Officer shall provide an explanation of the Board's resolution of the matter to the individual who made the report or complaint.

To avoid any potential conflict of interest, in the event that any reported incident alleges a violation of this policy which involves the Chief Compliance Officer, the Chairman of the Board of Directors shall take on the role and duties of the Chief Compliance Officer. If the complaint involves both the Chief Compliance Officer and the Board Chair, the matter shall be immediately referred to CF's attorneys for further review and action.

1.5    Whistleblower Policy


Reports of violations (or suspected violations) of the policies set forth in this manual will be kept confidential to the greatest extent possible, consistent with the need to conduct an adequate internal investigation. Concerns or allegations of compliance policy violations may also be reported anonymously as set forth in section 1.6 below.

No Board or staff member who in good faith reports a compliance violation shall suffer harassment, retaliation or adverse employment consequence as a result of his or her report. An employee or Board member who retaliates against someone who has reported a compliance violation in good faith is subject to disciplinary measures, up to and including termination of employment or removal.


1.6    How to Report a Compliance Violation

Staff questions and general concerns regarding this manual should be directed to Deputy Compliance Officer, Vicki Rounds, at vickir@childfoundationusa.com.

Anyone who suspects that a violation of CF's compliance policies has occurred should immediately contact the Chief Compliance Officer:

Dr. Asad Azemi
PO Box 59
Gradyville, PA 19039
Telephone: (503) 698-4084

The Chief Compliance Officer shall refer any reported violations to the Board of Directors, and shall provide an explanation of the Board's ultimate disposition of the matter to the individual lodging the complaint within 10 business days.

Violations of compliance procedures may also be reported in writing (anonymously or otherwise) directly to CF's outside legal counsel as follows:

Tina M. Foster, Esq.
Law Office of Tina M. Foster
214-06 36th Avenue, # 3
New York, NY 11361

Anyone who lodges a complaint of illegal or inappropriate conduct in violation of CF policy must be acting in good faith and have reasonable grounds for believing the information provided is accurate. Knowingly making false allegations of a compliance violation will be viewed as a serious infraction, and disciplinary action may be taken against individuals who engage in malicious or false reporting.

2    Structure of the Organization and Board Governance Obligations

2.1    Governing Documents

Child Foundation may only operate within the bounds of the purpose for which the organization was founded, as set forth its original Articles of Incorporation.  A copy of CF's Articles of Incorporation, which were adopted in 1994, is included in the Appendix at Tab 9.2.

Child Foundation's Bylaws further define the objectives, policies, structure, rights, duties and responsibilities of the organization and its Board.  Though CF has not yet established regional chapters, the Bylaws provide instructions for the formation and operation of Child Foundation affiliated chapters in the event that they are established in the future. A copy of CF's Bylaws, which were most recently revised by CF's Board of Directors on January 1, 2012, are included in the Appendix at Tab 9.3.

2.2    Separation of Board and Staff Functions

The Board of Directors of CF shall appoint a President to oversee the organization's program activities and day-to-day operations.  The President shall report directly to the Board of Directors. The Board shall periodically review the President's performance, and has the authority to discharge him/her.

The President shall also serve as an *ex officio* member of CF's Board of Directors.  However, the President may not participate in any discussion or vote of the Board regarding his/her salary or performance evaluation.

According to CF's bylaws, no more than one voting member of CF's Board of Directors may be a paid member of CF's staff. In addition, no paid member of CF's staff may serve as Chairman of the Board of Directors.

In the event of a vacancy in the position of President, the Board shall appoint a member of CF's staff to serve as Interim President until the position is filled.

2.3    Board Member Functions

CF's Board of Directors is responsible for ensuring that CF is effectively pursuing its mission and fulfilling its organizational goals. The Board is also responsible for ensuring that all of the organization's activities comply with applicable laws and regulations. This responsibility also includes a duty to investigate and take appropriate remedial action to resolve any alleged unlawful conduct or violation of the policies set forth in this manual.

Each individual member of CF's Board of Directors is independently responsible for ensuring that s/he understands and fulfills her/his legal and fiduciary obligations, including the duties of due care, loyalty, and obedience to the law. Members of the Board of Directors are expected to review and familiarize themselves with the "Board Member Roles, Rights and Responsibilities" included in the attached Appendix at Tab 9. 4.

All Board members agree to volunteer their time and expertise to CF, and are not permitted to seek a salary or other compensation from CF. (One exception to this policy is the position of President, who may be a paid member of CF's staff, as well as an *ex officio* member of the Board of Directors). Except for the President, no Board member may seek compensation for his/her Board service, other than reimbursement for reasonable expenses directly related to Board activities. Board members may only be reimbursed for travel and entertainment expenses directly related to their duties, and must demonstrate that they have complied with CF's Travel and Entertainment Expense Reimbursement Policy, included in the attached Appendix at Tab 9.5.

2.3.1    Board Composition

CF seeks individuals with diverse expertise and experience to serve as members of its Board of Directors. Currently, there are 6 members of CF's Board of Directors, with plans to recruit 3 new members by 2013 (increasing CF's total Board size to nine directors).

2.3.2    Board Member Orientation, Training, and Required Undertakings

Within one month of an individual's nomination to CF's Board of Directors, the Chairman of the Board shall ensure that the new Board member is provided with appropriate orientation materials, including a copy of CF's Articles of Incorporation, Bylaws, summary of Board Member Roles and Responsibilities, as well this Compliance Manual and all documents incorporated by reference herein. Prior to participating in any vote taken by the Board of Directors, each member of the Board shall first review, complete, and sign copies of the following documents: (1) Conflict of Interest Policy and Disclosure Form, and (2) Compliance Program Acknowledgment Form.

2.4    Length of Service & Term Limits

According to CF's bylaws, Board members may not serve more than thirty-six months without standing for re-election. In addition, Board members may not be elected for more than two consecutive terms. (See Bylaws, Art. 48).

2.5    Board of Directors Meetings

At least four times every fiscal year, the Board of Directors shall meet (either in person or via conference call) with a quorum present.

Written minutes for each Board meeting, and each meeting of any committee with authority to act on the Board's behalf, shall be maintained by the in the organizations files by the Board Secretary and made accessible to all Board members. (See Bylaws, Art. 86).

2.6    Board Responsibility to Monitor Mission and Strategy

The Board of Directors is responsible for ensuring that Child Foundation is operated primarily to further the organization's objectives, which are to:

a)    maintain needy orphaned or needy gifted children of the world in school
b)    provide for the education and training of needy gifted children of the world;
c)    provide for the education and training of needy orphaned children of the world;
d)    provide medical assistance to needy orphaned or needy gifted children of the world;
e)    provide food and other necessities to needy orphaned or needy gifted children of the world; and
f)    provide relief and aid to the needy children of the world.

(See Bylaws, Article 4).

The Board shall conduct an annual review of CF's bylaws and other governing documents to ensure their continued efficacy and conformity with all applicable legal requirements and best practices.

At least once a year, the Board shall review all of CF's programs and activities in order to evaluate their effectiveness and impact.  This review shall be conducted as part of CF's Annual Meeting and shall be recorded in the meeting minutes. (See Bylaws, Articles 52 and 86).

2.7    Board Oversight of Financial Activities

The Board of Directors of Child Foundation (CF) is responsible for guiding, reviewing, and approving CF's financial matters—including internal controls, independent audits, and strategic projections and analyses.  The Board's financial responsibilities include:

a.    Ensuring that organizational funds are spent in accordance both with CF's mission and donor-intent;

b.    Reviewing revenues and expenses at quarterly Board meetings;

c.    Assessing CF's continued solvency on the basis of its revenues and expenditures, balance sheets, and investments;

d.    Assessing and responding to aggregated financial information and trends that may impact CF's mission;

e.    Ensuring the maintenance of a capital structure appropriate to CF's short and long term charitable goals;

f.    Overseeing the maintenance of organization-wide assets, including prudent management of investments;

g.    Arranging annual audits by an independent third-party and reviewing the resulting audited financial statement(s);

h.    Annually submitting complete, accurate, and timely state and federal tax filings, including CF's complete IRS Form 990 and all relevant schedules and attachments.

i.    Approving the annual budget.


2.8    Establishing the Annual Budget

No later than one month prior to the end of the fiscal year, the President shall present to the Board a draft budget for the upcoming fiscal year. No later than one month after the start of the fiscal year, the Board shall approve the final operating budget for the current fiscal year. This approval must be documented in the Board minutes, and the Budget should outline estimated costs across the following three categories of expenditure: programs, fundraising, and administration.

The budget is CF's plan for raising and spending funds for its charitable programs, functions, activities, and objectives, and is incorporated within CF's accounting and financial reporting systems.

The Board may amend the budget during the year, in response to changes in budget estimates, the receipt of new funds, etc. However, each change or amendment must be approved by the Board and recorded within the minutes of the meeting in which the change was adopted.


2.9    Maintaining Balanced Reserves

CF maintains an operating reserve or an "unrestricted fund balance" in order to stabilize its finances, as needed, to meet its charitable objectives.

The Board of Directors must approve any agreement or policy regarding the use of reserve funds, when they can be used, who is authorized to use them, and/or how the Board should be informed of their use.

2.10    Monitoring the President's Performance and Setting Compensation

The Board annually sets performance goals for the President, and shall evaluate his or her performance against those goals and other relevant criteria.

If the President is compensated by CF, the Board (or a committee to whom the Board has delegated this authority) shall determine a reasonable amount of compensation to be provided to the President that is commensurate with his or her level of education, experience, and length of service, and is within the range of salaries offered for comparable positions in the non-profit sector.

No individual may participate in compensation deliberations whose salary is the subject of discussion, or has any other conflict of interest.  The names of all individuals present during compensation deliberations shall be recorded in the minutes of the meeting in which the deliberations occurred.

2.11    Commitment to Diversity and Inclusion

CF strives to foster diversity and ensure inclusivity in carrying out its mission of helping impoverished children reach their true potential.  As part of the strategic planning process, the Board shall:

- Identify the communities and constituents served by CF in the accomplishment of its mission;
- Ascertain whether CF's composition (including, Board, staff, volunteers, donors, vendors and partners) reflects the diversity of the communities served by CF; and
- Determine how CF can best serve the broadest possible constituencies in the attainment of its mission.

3    Conflicts of Interest

3.1    Policy

CF has implemented a conflict of interest policy that prohibits individuals acting on behalf of the organization from engaging in conflicted transactions.  CF requires all volunteers and employees to provide an annual disclosure of potential conflicts of interest.  This policy applies to all staff, directors, regional officers, committee members, or any one else who is tasked with decision-making authority on behalf of the organization that could be influenced by his/her own personal or business interest.

3.2    Disclosure Form

All staff and Board members are required to complete and sign a "Conflict of Interest Policy & Disclosure Form" immediately upon joining CF and prior to commencing their duties. This form includes detailed instructions for identifying, disclosing and resolving potential conflicts, and is included in the attached Appendix at Tab 9.7.


3.3    Continuing Disclosure Obligation

Staff and Board members are obligated to inform the Compliance Officers immediately in the event that any of the information disclosed in the conflict of interest form later changes. As soon as practicable after such a change occurs, the staff or Board member must provide an updated Conflict of Interest Policy & Disclosure Form.

Regardless of whether any of the information provided has changed, all CF staff and Board members are required to complete and sign a renewed Conflict of Interest Policy & Disclosure Form on an annual basis.

The Compliance Officers shall timely review all Conflict of Interest Disclosure Forms, and shall report any potential conflicts of interest to the Board of Directors as soon as practicable. The Compliance Officers, with the assistance of the President and Chairman of the Board of Directors, shall also be responsible for maintaining up-to-date Conflict of Interest Disclosure Forms in the appropriate CF compliance and personnel files.


4    Tax-exempt Status as a Public Charity

In recognition of its mission to improve the lives of impoverished children, Child Foundation is classified by the Internal Revenue Service (IRS) as a not-for-profit organization exempt from payment of federal income tax pursuant to Section 501(c)3 of Internal Revenue Code.

CF is incorporated and registered as a tax-exempt organization in the state of Oregon. CF is also registered to solicit funds in many other states, including California, Illinois, Michigan, New Jersey, New York, Ohio, Texas Virginia, Washington, Washington, D.C., and Wisconsin.

In order to maintain its status as a non-profit organization and registration to solicit charitable donations, CF must adhere to the following policies and procedures.

4.1    No Private Benefit Rule

CF is operated solely for the charitable purposes of providing impoverished children with food and educational opportunities, and not for the benefit of any personal or private interest. Therefore, all CF Board and staff members are prohibited from engaging in any transaction or activity on behalf of the organization which provides a personal benefit to him/herself, or furthers his/her own private interests. All staff and Board members are required to disclose any potential conflicts of

interest as soon as they become aware of them, and should refrain from acting on behalf of the organization in any situation in which a conflict of interest is likely to arise.

No member of CF's staff or Board shall authorize any action which provides an economic benefit (that exceeds the value of any goods or services provided in consideration thereof) to any person who is in a position to exercise substantial influence over CF's affairs

The President and the Board of Directors also must ensure that all compensation to employees is reasonable and commensurate with that of comparable positions in the non-profit sector.

The President and the Board of Directors shall also ensure that no part of CF's net earnings benefit anyone with a personal or private interest in the activities of the organization.


4.2    Substantiation of Donations and Income

CF assists donors in meeting the IRS substantiation rules and properly discloses the value of any goods or services provided by CF in exchange for contributions. Accordingly, CF provides written receipts for all donations via email or post at the end of each calendar year. All contributions are acknowledged no later than January 31 of the following year.  Included in each acknowledgment letter sent to donors are CF's name and contact details, the date and the dollar amount of any monetary contribution, and (if applicable) the specific program or sponsored child for which the funds were intended.

CF avoids soliciting or collecting monetary contributions paid in cash (rather than check, credit card, or electronic transfer).  However, when payments in cash cannot be avoided (e.g., admissions fees paid at the door, fundraising events, etc.), staff shall provide a written receipt to the donor documenting the contribution immediately – at the time when the cash payment is received.

CF provides donor acknowledgement letters for in-kind contributions, as well.  However, IRS regulations require that the donor evaluate the dollar amount of any in-kind or non-cash contribution, rather than the recipient organization.  Therefore, CF's donor acknowledgment letter provides only a description of any non-cash contributions, in lieu of a dollar value.


4.3    Documentation of Quid Pro Quo Contributions

In general, CF does not provide any goods or services to its donors in consideration of their charitable contributions. However, from time to time, CF may engage in fundraising activities in which it provides goods or services in exchange for a contribution (i.e., a *quid pro quo* contribution). For example, ticket purchases and similar payments made in conjunction with fundraising events may not qualify as charitable contributions in full. In such an instance, the donor may only take a charitable contribution deduction to the extent that the contribution exceeds the fair market value of the goods and services the donor receives in return for the contribution.

If CF conducts fundraising events such as benefit dinners, shows, or membership drives, where something of value is given to those in attendance, it will disclose in writing to donors the fair

market value of the specific items or services it provided in exchange for contributions. Whenever the ticket price of such an event exceeds $75 (including the contribution portion), CF shall disclose the fair market value of any benefit being provided by CF to the purchaser. This information is provided so that purchasers of tickets to fundraising events are apprised of the amount of the ticket price which may properly be deducted as a charitable contribution for federal income tax reporting purposes.

4.4     Prohibition on Lobbying or Political Campaigning

CF neither participates (directly or indirectly) in political campaigns of any kind, nor engages in substantial legislative activity (commonly referred to as lobbying). CF staff, Board, and volunteers are thus prohibited from making any statements on behalf of the organization in favor of, or in opposition to, any candidate for public office. CF does not make any contributions to political campaign funds, and does not invite political candidates to appear or speak at CF events.

Any person acting on behalf of CF shall refrain from contacting, or urging the public to contact, members or employees of any legislative body for purposes of proposing, supporting, or opposing legislation. CF Board, staff and volunteers shall refrain from making partisan comments in official organization publications or at official functions.

Members of CF's staff and Board who exercise their right to free expression on political matters must do so only in their capacity as private citizens. Whenever appropriate and/or necessary to avoid confusion, individuals shall make explicit that any public political statements they make are as private citizens do not necessarily reflect the views of Child Foundation.

No member of CF's staff or Board is authorized to include CF's name on "sign-on" letters, or participate in any other coalition advocacy activities, without prior approval by CF's Board of Directors. CF's Board of Directors shall consult with outside legal counsel regarding any proposed public advocacy activity prior to approving such a request.

4.5     Fundraising Disclosures

Through information published on the CF website, within CF brochures, and on CF invoices, CF informs its donors about how and where their donations will be spent. Staff must ensure that all print, email and electronic solicitations clearly identify Child Foundation as the recipient of the donation, provide CF's contact details, and (if applicable) describe the specific purpose or programs for which CF intends to use the funds.

4.6     Prohibition on allowing Donor Oversight of their Contributions

Pursuant to federal regulations, CF does not allow donors to exercise control over their donations after the funds are transferred to the organization. While donors are free to indicate a preference that their contribution will support a particular child or program, CF must determine how to expend the funds once they have been received.

CF staff and Board members should strive to ensure that donor funds are expended in a manner consistent with their intended charitable purpose. However, it remains the duty of all those acting

on behalf of the organization to ensure that donated funds are used to further CF's mission and program goals.  CF staff and Board members are prohibited from allowing donors to dictate how the organization spends its funds, and should take care not to give the impression to donors that they may exercise any degree of control over their donations after they are made.

### 4.6.1   Disclaimer to Child Sponsors

CF puts sponsors of individual children on notice of CF's full authority over completed donations by printing the disclaimer below on solicitations and acknowledgments relating to its child sponsorship program.

> *Child Foundation has learned that one of the most effective ways of helping children is to combine the donations of our sponsors so that we can purchase food and other essential supplies in bulk. Thus, your donation may not be provided directly to your sponsored child. This system not only allows us to comply with federal regulations, but also allows Child Foundation to provide benefits to even more children than the small number who are fortunate enough to have a sponsor like you.*

## 5   Office of Foreign Asset Control (OFAC) Compliance Procedures

### 5.1   Purpose and Scope

All US persons and organizations are prohibited by law from engaging in transactions that benefit individuals, groups, or governments designated by the US government to be a threat to the safety, security or economy of the United States.  Prohibited transactions benefitting such individuals, groups, or governments include "the making or receiving of any contributions of funds, goods or services".

As an organization organized and operating in the United States, CF must comply with these legal requirements in carrying out its activities both domestically and abroad.  The US government may file civil or criminal charges against organizations and individuals who violate these requirements – even if the violation was unintentional. The penalties which may be imposed against those who fail to comply include monetary fines of up to $1 million, and prison terms of up to 12 years.

### 5.2   What is OFAC?

The Office of Foreign Asset Control (OFAC) is a division of the U.S. Department of the Treasury and is the agency that enforces economic and trade sanctions against targeted organizations, individuals, or foreign countries and their agents.  OFAC also has the authority to impose controls on financial transactions and freeze and/or confiscate foreign assets under United States jurisdiction.

OFAC maintains, publishes, and periodically updates lists of individuals and organizations designated as blocked persons or groups (for example, known drug traffickers and organizations that sponsor terrorism). These lists are routinely updated by OFAC and published online on OFAC's website at http://www.treasury.gov/resource-center/sanctions/Pages/default.aspx.  In most

instances, the lists provide additional information (such as mailing addresses, or known aliases) to assist those screening names to properly identify blocked individuals and groups.

## 5.3    Prohibition on Transactions with Blocked Persons

Child Foundation routinely checks the names of its employees, sponsors, donors, contractors, grantees, vendors, and affiliated organizations to ensure that it does not conduct business with individuals, groups or entities for prohibited transactions.

In addition, CF also screens the names of all parties prior to entering into any transaction or contract involving funds, goods or services greater than $250.

### 5.3.1    Verification Software and Database

Ongoing maintenance and support for OFAC compliance screening is provided to CF by a private software provider called ATTUS Technologies. Though it is possible to check for matches with the names of prohibited persons on OFAC's website, this process can be cumbersome. Thus, Child Foundation has purchased specialized software and contracted with an outside vendor to ensure timely and accurate OFAC compliance verification procedures. Their contact details are below.

ATTUS Technologies, Inc.
13860 Ballantyne Corporate Place
Suite 200
Charlotte NC 28277
Tel: (704) 341-5750
Website: http://www.attustech.com/

ATTUS Technologies monitors the updates to the Treasury Department's list of Specially Designated Nationals (SDNs), as well as individuals or entities blocked by other domestic and international sanctions regimes. When any of this data is changed by OFAC or other authorities, ATTUS Technologies staff ensures that the new data is downloaded, processed, optimized and tested for use within 24 hours of release. The company also provides immediate notifications to CF of changes in the list data as soon as they are made by regulators.

### 5.3.2    Parties to Be Screened

- CF routinely screens the names of its donors, sponsors, grantees, and all other parties to/from whom CF transfers or receives funds, goods, or services, through the verification process set forth in the Prohibited Transactions Screening Procedures, included in the Appendix at Tab 9.8.
- In addition, prior to entering into any transaction or contract greater than $250, CF screens all parties to such transaction or contract through the verification process.

- The names of key employees and other members of groups who are parties requiring verification (such as Board members of foundations or CEOs of corporate entities) shall be screened, in addition to the name of the organization which they represent.
- When in doubt as to whether verification of a particular party is necessary, staff should err on the side of over-inclusion and screen all those who may be subject to this requirement.

### 5.3.3    Compliance Verification Procedure

The name of every individual or entity identified as a party subject to verification in section 5.3.2 above shall be screened through specialized software intended to detect prohibited transactions. The software (developed and supported by ATTUS) -- called WatchDOG Pro -- screens for names of individuals and organizations sanctioned by OFAC, as well as those flagged by the FBI, INTERPOL, and a number of other international criminal and civil authorities.

Prior to assuming any bookkeeping or accounting duties, all staff shall be trained on the use of WatchDOG Pro, and must review and sign the Prohibited Transactions Screening Procedures & Acknowledgment Form, included in the Appendix at Tab 9.8.

### 5.3.4    Reporting of Blocked Transactions

In the event that Screening Procedures indicate a match with a party subject to sanctions or trade restrictions, CF staff shall refrain from going forward with any proposed transaction with that party. In addition, when such a blocked individual or entity is identified, staff shall immediately inform the Deputy Compliance Officer. The Deputy Compliance Officer shall then inform the Chief Compliance Officer that a blocked party has been identified, and shall take appropriate measures to ensure that CF does not engage in any prohibited transaction with that party. In the event that a transaction has (or is suspected to have) already occurred with a blocked party, the Compliance Officers shall immediately call the matter to attention of the Board of Directors and CF's attorneys.

The Compliance Officers, in consultation with CF's Board of Directors and legal counsel, shall also report to OFAC within 10 days any blocked or rejected transaction with an individual whose name appears on the list of Specially Designated Nationals as required by OFAC.

### 5.3.5    Quarterly Re-Screening by Deputy Compliance Officer

At least once per quarter, the Deputy Compliance Officer shall independently re-screen all parties subject to the verification requirements pursuant to the Prohibited Transactions Screening Procedures. The Deputy Compliance Officer shall report the results of this quarterly verification to the Board of Directors, and the substance of the report shall be summarized and included in the minutes of the Board meeting in which it was presented.

5.4    OFAC Compliance Policy re Iranian Child Sponsorship Program

Child Foundation currently provides humanitarian assistance to approximately 2,700 children in Iran. With the guidance of outside legal counsel, CF's Board of Directors has structured its Iran sponsorship program to avoid running afoul of trade restrictions and sanctions against Iran. Importantly, CF staff and Board are prohibited from providing or receiving funds, goods or services of any kind from any office or agent of the Iranian government.

The US economic sanctions and the system of related export control laws currently in force against Iran are complex. Therefore, the Board of Directors has retained attorneys with appropriate expertise and experience in OFAC compliance matters in order to develop and implement this policy. Legal Guidelines for CF's Iranian Child Sponsorship Program have been developed by CF's outside legal counsel, Berliner, Corcoran, & Rowe, LLP. The full guidelines, along with a detailed Memorandum of Understanding summarizing CF's agreement with the Iranian NGO Refah Koudak, and are included in the Appendix at Tab 9.9.

The information provided below is a summary of the applicable legal requirements. Staff or Board members responsible for any aspect of implementing CF's programs in Iran should carefully review this information, as well as the Legal Guidelines attached at Tab 9.9, and consider how these requirements may affect their duties or responsibilities. Any staff or Board member with questions or concerns about CF's Iranian child sponsorship program is encouraged to seek guidance directly from their supervisor, the Chief Compliance Officer, and/or CF's attorneys.

5.4.1    Humanitarian Donations Exception

In general, US persons (including organizations incorporated within the U.S., such as Child Foundation) are prohibited by law from transferring funds, goods or services to individuals or entities located in Iran. However, there is an exception to this prohibition for donations of articles intended to relieve human suffering (such as food, clothing and medicine). Thus, in order to comply with US law, CF transfers food items (only) to an Iranian non-governmental organization. The Iranian NGO in turn distributes the food to CF's sponsored children in Iran.

5.4.2    Memorandum of Understanding with Iranian NGO, Refah Koudak

In order to ensure that CF's Iranian child sponsorship program is fully compliant with OFAC trade restrictions and sanctions, CF deals exclusively with the non-governmental organization, Refah Koudak (RK), in Iran. The terms of CF's agreement with RF to provide humanitarian assistance to Iranian children are set forth in a detailed written Memorandum of Understanding. CF staff and Board are prohibited from providing or receiving funds, goods, or services to/from any private person or entity located within Iran, other than RK.

CF staff and Board are prohibited from attempting to alter any aspect of CF's activities in Iran, or its arrangements or MOU with RK, unless such modifications are approved in advance by CF's attorneys.

### 5.4.3    Personal Communications and Informational Materials

CF staff, Board, and volunteers may engage in personal communications with entities and persons in Iran and may also provide them with pre-existing informational materials about CF's work. (Informational materials include books, magazines, pamphlets, newspapers, CD-ROMs, DVDs, and similar items).

CF staff, Board, and volunteers should not, however, collaborate with persons or entities in Iran in the creation of informational materials, unless CF's outside legal counsel first indicates that to do so would be lawful under the circumstances.

### 5.4.4    Travel-Related Transactions

CF staff, Board, and volunteers may travel to Iran and engage in travel-related transactions within Iran, such as hiring taxis, hotels, or other incidental services and purchasing goods necessary for their personal needs while traveling in Iran.  Individuals traveling to Iran on official CF business, or staff members responsible for arranging or facilitating such visits, should first consult with CF's Compliance Officers prior to engaging in any transaction other than those listed above.

### 5.4.5    Ancillary Services

CF may provide assistance to RK only to the extent that the assistance is directly related to the distribution of CF's permissible humanitarian donations to sponsored children within Iran.

### 5.4.6    Specific Licenses

Should CF wish to broaden its charitable activities within Iran beyond the distribution of humanitarian articles, CF must consult with legal counsel in order to ascertain whether a specific license from OFAC will be required.  Thus, CF staff and Board members are prohibited from enlarging CF's activities in Iran beyond the delivery of food items described in its Memorandum of Understanding with RK (see section 5.4.2 above) without prior approval from CF's outside legal counsel.

### 5.4.7    Restrictions on Financial Transactions and Logistics

Any financial transaction facilitating CF's provision of humanitarian articles to sponsored children within Iran must not involve a prohibited Iranian financial institution.

In the provision of humanitarian articles within Iran, CF may not book cargo service with the Islamic Republic of Iran Shipping Lines ("IRISL"), Iran Air and its affiliates, or with the company that currently operates the terminals in several major Iranian ports (including Bandar Abbas).

Additionally, CF may not route any shipments through ports that are targeted by the sanctions regime. (Note: CF staff, Board, and volunteers may still book individual air travel on Iran Air and its affiliates).

## 6    Financial Management and Practices

### 6.1    Bookkeeping Procedures

CF has adopted a detailed bookkeeping policy that addresses the processes for accounting for all organizational income and expenses. Accounting staff (and any employee, consultant, or volunteer whose duties include receiving or documenting payments from/to the organization) shall follow these procedures for all transactions involving the receipt or disbursement of funds on behalf of the organization. A copy of the Bookkeeping Guidelines are included the attached Appendix at Tab 9.9.

### 6.2    Role of the Financial Controller

The Financial Controller is responsible for the day-to-day management of CF's financial activities. The Controller is also tasked with ensuring that the organization's expenditures are consistent with the Annual Budget adopted by the Board of Directors. The Controller reports to the President, as well as directly to the Board of Directors.

At a minimum the Controller should have a Bachelor's degree in accounting or a closely related field, or have extensive professional experience with accounting practices.

The Controller's responsibilities include, but are not limited to:

a.    <u>Informing and Advising the Board of Directors</u>

The Controller shall report directly to the Board of Directors and his/her duties to the Board include:

i.    Providing timely and accurate financial information and reports;

ii.    Suggesting budgetary and other financial actions;

iii.    Providing the Board with information in advance of key financial decisions, and ensuring that the Board has the opportunity to review and approve key financial decisions; and

iv.    Overseeing CF's corporate savings and checking accounts and providing the Board with an accounting of the annual yield from these accounts.

b.    <u>Accurate Bookkeeping and Supervision of Accounting Department</u>

The Controller is responsible for oversight of CF's accounting department, which administers CF's finances and must adhere to the practices set forth in the Bookkeeping Guidelines (see Appendix, Tab 9.9). The Controller must ensure that staff execute their duties accurately and efficiently by:

v.      Overseeing accounts payable and receivable;

vi.     Managing bank and investment accounts;

vii.    Managing grants;

viii.   Planning and reviewing employee compensation actions, including pay raises and benefits alterations, as directed by the President and/or Board of Directors.

6.3    Travel and Entertainment Reimbursement Policy

Anyone traveling on CF business must comply with the Travel and Entertainment Reimbursement Policy, included in the attached Appendix at Tab 5. It is the responsibility of the traveler to ensure that he/she complies with this policy in order to qualify for reimbursement of his/her expenses. This policy requires verification by the traveler, the Controller, and ultimately the Board of Directors, that all expenses submitted for reimbursement are for a proper business purpose, identify the correct amounts, are supported by receipts or other proper documentation, and are otherwise fully compliant with CF's policies.

7    Document Retention Policy

CF is currently obligated to preserve certain documents and electronic data in its possession which relate an ongoing criminal matter involving CF's former President, Mehrdad Yasrebi. At this time, therefore, it is CF's policy to retain all hard-copy and electronic information in the organization's custody.

Employees of CF are prohibited from destroying, erasing, or otherwise altering any documents or computerized information in the possession of the organization without prior express approval from CF's attorneys. This includes letters, agreements, reports, drafts, memos, calendars, program notes and records, date books, appointment books, handwritten notes, emails, messages, computer records, computer programs, data stored on hard drives or floppy disks, and back-up tapes.

In addition, the laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Therefore, CF must preserve the following platforms until further notice: databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, CF employees must take every reasonable step to preserve this information until further notice from CF's attorneys.

This includes, but is not limited to, an obligation to:

- Discontinue all data destruction and backup tape recycling policies;
- Preserve and not dispose of relevant hardware unless an exact replica of the file (a mirror image) is made;
- Preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and
- Maintain all other pertinent information and tools needed to access, review, and reconstruct necessary to access, view, and/or reconstruct all requested or potentially relevant electronic data.

## 8    Public Information and Reporting

As a charitable organization, CF has tax-exempt status both under section 501(c)(3) of the Internal Revenue Code and under state law. In order to maintain its tax-exempt status, CF must annually file a timely, accurate and completed Form 990 with the Internal Revenue Service (IRS), including all relevant schedules and supporting documents.  CF must also comply with the relevant annual or bi-annual state-law filing requirements for its audited financial statements, state tax returns, and any other pertinent documentation, as required by the laws of the states in which CF is registered.

CF's financial statements and IRS filings for at least the past three years are available at CF's website. The initial Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (IRS Form 1023) filed by CF is made available to the public upon request.

### 8.1.1    Annual Reporting

CF is deeply committed to transparency in order to build and maintain public trust in its mission and to encourage charitable support that is both well informed and responsible.  Thus, CF makes the following information publicly available in its Annual Report and on its website:

- A list of CF's Board of Directors;

- CF's annual financial statements, prepared in conformance with Generally Accepted Accounting Principles (GAAP);

- A summary of the total cost of each of CF's major programs, as well as CF's fundraising and administrative costs;

- Disclosure of CF's highest paid employees as required by IRS Form 990;

- Descriptions of CF's programs, activities, and accomplishments in relation to CF's mission, for at least the most recent fiscal year;

- Descriptions of the communities, populations, and geographic areas served by CF;

- A list of all current chapters, affiliates, and partners;

- CF's goals for the upcoming year.

(See 2010-2011 Annual Report, included in the attached Appendix at Tab 9.10).


8.1.2    State Registration and Reporting

CF is a registered non-profit organization in the state of Oregon, and every other state in which it solicits donations.

As a non-profit organization in the state of Oregon, CF complies with Oregon's registration and annual filing requirements for non-profits, including:

- Form 20, Oregon Corporation Excise Tax Return (due annually on April 15th to the Oregon Department of Revenue)

- Form CT-12 (due 4.5 months after the end of the fiscal year to the Oregon Department of Justice)

- Annual Report for Non-Profit Corporations (due annually within 45 days of the anniversary date on which the original Articles of Incorporation were filed to the Oregon Secretary of State).

As a national organization, CF is also registered to solicit funds in several other states: California, Illinois, Michigan, New Jersey, New York, Ohio, Texas Virginia, Washington, Washington, D.C., and Wisconsin. CF reports to each of these states and provides copies of its audited financial statements on an annual or bi-annual basis.


8.1.3    Additional Public Disclosures

In the final quarter of each calendar year, CF makes its Annual Report and financial statements available to the public on its website and through GuideStar. CF also mails copies of its Annual Report to its donors and sponsors.


8.2    External Financial Audits

Each year, the Board of Directors shall hire an external auditor (i.e. an independent third-party Certified Public Accountant or accountancy firm) to conduct an independent audit of CF's financial statements. This audit shall be conducted at the conclusion of each fiscal year, and shall include a review and analysis of CF's books, records, and financial status.  At a minimum, the audit shall:

- Randomly substantiate amounts and disclosures within CF's financial statements— e.g.,  cash flows, credits, debts, salaries, assets and incomes;

- Assess the accounting principles used, as well as any significant estimates used or relied upon by CF's management; and

- Comprehensively evaluate CF's financial health and compliance with generally accepted accounting principles.

For the past three years, CF's financial statements have been audited by:

Susan M. Haase, CPA
Peninsula Accounting Services, Inc.
220 South Spruce Avenue, Suite 203
San Francisco, CA, 94080


9    APPENDIX

9.1    Compliance Program Acknowledgment Form

9.2    Articles of Incorporation

9.3    Bylaws

9.4    Board Member Roles, Rights, and Responsibilities

9.5    Travel and Entertainment Expense Reimbursement Policy

9.6    Conflict of Interest Policy & Disclosure Form

9.7    Prohibited Transactions Screening Process & Acknowledgment Form

9.8    Legal Guidelines for Iranian Child Sponsorship Program & Memorandum of Understanding with Refah Koudak

9.9    Bookkeeping Guidelines

9.10    Annual Report